[No. 892.  Decided June 24, 1893.]

THE CITY OF SPOKANE, *Respondent*, v. ANDREW M. ROB-
ISON, *Appellant*.

MUNICIPAL CORPORATIONS—VIOLATION OF ORDINANCES—PROSE-
CUTION—EVIDENCE—MAINTAINING SLAUGHTER HOUSE IN CITY
LIMITS.

A prosecution for the violation of a city ordinance may be con-
ducted in the name of the city instead of in the name of the state.

The charter of the city of Spokane providing that the city attor-
ney shall conduct all prosecutions for violations of its ordinances
does not require that officer to subscribe and swear to the com-
plaints therefor, and the prosecution may be had upon the com-
plaint of any private person.

In a prosecution for maintaining a slaughter house within the
city limits at a certain time in the year 1892, evidence is immaterial
as to what the boundaries were in 1886.

Cities of the first class are authorized to prohibit the erection
and maintenance of slaughter houses within their corporate limits.

*Appeal from Superior Court, Spokane County.*

*Dawson & Plattor,* for appellant.

*P. Q. Rothrock,* for respondent.

The opinion of the court was delivered by

DUNBAR, C. J.—The respondent was convicted of violat-
ing a certain ordinance of the city of Spokane, which pro-
vides that it shall be unlawful for any person, firm or
corporation to create, erect, construct, maintain, keep or
use any tannery, bone or soap factory, packing house,
slaughter house, stock yard, or any other offensive or un-
wholesome business or establishment, within the limits of
the city of Spokane Falls, and provides for the punish-
ment of a violation of said ordinance.

The complaint was as follows:

"P. G. Clough, being duly sworn, says that he resides
in the city of Spokane, Spokane county, Washington;

that on the 31st day of May, 1892, in said city of Spokane, Andrew M. Robison did willfully and unlawfully violate §§ 1 and 2 of ordinance number 22, entitled 'An ordinance to prohibit the erection of tanneries and slaughter houses within the limits of the city of Spokane,' and passed August 20, 1884, of the laws and ordinances of the city of Spokane, in that he did then and there keep and use a slaughter house and stock yard within the limits of said city of Spokane. Wherefore he prays," etc.

We do not think the contention that the complaint is invalid because the case is entitled City of Spokane *v.* Andrew M. Robison is well founded. Under similar constitutions, as far as we have been able to ascertain, it has been universally held that the constitutional provision that all prosecutions shall be conducted in the name of the state does not apply to prosecutions by municipal corporations for the violation of city ordinances. In discussing this subject, Mr. Dillon, in his work on Municipal Corporations, vol. 1, § 429, says:

"The distinction between statute law and municipal by-laws has been pointed out, and the subject of concurrent prohibitions of the same act by the general law and by the local ordinances of a municipality treated in the chapter on ordinances. The distinction is there drawn, and is to be observed, between acts not essentially criminal, relating to municipal police and regulation, and those intrinsically criminal, and which are made punishable as public offenses by the general laws of the state. The pecuniary penalties which are annexed to violations of the former class the legislature may, we think, authorize the corporation to enforce in its own name."

The cases there discussed and cited are under constitutional provisions similar to ours. Our legislature has especially provided that all prosecutions for the violation of a city ordinance shall be conducted in the name of the city. See § 533, Gen. Stat.

The second ground of objection, we think, is equally un-

tenable.    While it is true that the charter of the city pro-
vides that the city attorney is the public prosecutor of the
city, and also provides that it shall be the duty of the city
attorney to conduct all prosecutions for offenses committed
against any of the ordinances of the city, it does not pro-
vide, nor can it be inferred, that the city attorney must
subscribe and swear to all complaints for violations of city
ordinances, and that no prosecutions shall be maintained
unless he does so.    Sec. 533 of the code, referred to above,
expressly provides that prosecutions for the violation of
any city ordinance may be on the complaint of any person,
and this law we think in no way conflicts with the charter
provisions of the city of Spokane.    There is a vast differ-
ence between conducting a prosecution and swearing to a
complaint.

In our judgment the court did not commit any error in
denying the motion to dismiss.    The demurrer was also
properly overruled, as the complaint stated a cause of ac-
tion against the defendant.    The ordinance prohibits any
one from maintaining a slaughter house within the limits
of the city, and defendant was charged with violating the
ordinance properly referred to in the complaint by keeping
and using a slaughter house within the limits of the city
for a certain definite time mentioned.    We hardly see how
the crime could have been more definitely charged.    The
evidence offered by the appellant, and to the introduction
of which the court sustained an objection, was properly
rejected for the reason that it was immaterial what the
boundary of the city was in January, 1886, or at any other
time than at the time of the alleged violation of the ordi-
nance.

We see nothing objectionable in the instructions of the
court, so far as the right of the city to pass such an ordi-
nance is concerned.    It is unquestioned that our statute
empowers cities of the first class (to which class the city

of Spokane belongs) to direct the location and construction of all buildings in which any trade or occupation offensive to the senses or deleterious to the public health or safety shall be carried on, to regulate the management thereof, and to prohibit the erection or maintenance of such buildings or structures, or the carrying on of such trade or occupation, within the limits of such corporation, etc. A slaughter house, as it is generally conducted, is notoriously offensive to the senses, and we have no doubt was one of the occupations especially contemplated by the legislature when the power was conferred on the cities. Nor do we think that the enactment of subdivision 34 (Laws 1889–90, p. 223, § 5) destroys any of the force of the language used or power conferred in subdivision 22 (*Id.*). The vital question in this case, viz., the constitutional right of the city to exercise the power as a police regulation, has been so exhaustively argued by the supreme court of the United States in the noted *Slaughter House Cases*, reported in 16 Wall. 46, that the law may be considered as settled in favor of the validity of such power, and it would be but a work of supererogation to discuss this subject at length.

Our conclusion is, that the city had the power to pass the ordinance; that the appellant was legally charged and convicted of its violation, and that the judgment must be affirmed; and it is so ordered.

SCOTT, HOYT, STILES and ANDERS, JJ., concur.