Beiling *v.* City of Evansville.

sections 383, 386, 426; 9 Am. and Eng. Ency. of Law (1st ed.), p. 279; note to *Dresler* v. *Hard* (N. Y.), 12 L. R. A. 456.

The petition is overruled.

Filed April 24, 1896.

*a*

No. 17,531.

## Beiling *v.* City of Evansville.

MUNICIPAL CORPORATION.—*Ordinance.*—*Unreasonableness.*—An ordinance cannot be successfully assailed in a judicial tribunal for unreasonableness when it has been adopted by express authority of the Legislature without conflict with any constitutional prohibition or fundamental principles.

SAME.—*Ordinance.*—*Slaughterhouse.*—An ordinance prohibiting the maintenance of any slaughterhouse within the city when authorized by statute cannot be defeated by the courts on the ground that it is unreasonable.

SAME.— *Ordinance.*— *Slaughterhouse.*—The necessity or expediency of prohibiting slaughterhouses in a city is implied from an ordinance making that prohibition, without any provision for investigation into the character or condition of the slaughterhouses.

From the Vanderburgh Circuit Court.

*J. T. Walker* and *P. W. Frey,* for appellant.

*G. A. Cunningham,* for appellee.

JORDAN, J.—Appellant was prosecuted and convicted of having on the 4th day of June, 1894, violated the provisions of an ordinance of the city of Evansville, adopted Dec. 19, 1892, entitled an ordinance prohibiting the slaughtering of animals and the maintaining of slaughterhouses within the city. Section 1 of this ordinance reads as follows:

"Section 1.    Be it ordained by the common council of the city of Evansville, that after the 1st day of June, 1894, it shall be unlawful to slaughter any animal or to maintain any slaughterhouse within the city of Evansville."

Section 2 provides a penalty to be assessed for a violation of any of the provisions of the ordinance of not less than $10.00 nor more than $100.00.

The evidence in the record establishes that the appellant, on the date charged in the complaint, was guilty of maintaining a slaughterhouse within the city of Evansville, and was engaged in slaughtering therein beeves, hogs and sheep to supply a meat market, in which business he was engaged.

On the 11th day of February, 1895, counsel for appellant filed a brief, at the close of which it was stated that in the near future they would file an additional one wherein they proposed to argue and present more fully the invalidity of the ordinance.    But the record does not disclose the filing of this proposed brief, nor do we find it among the papers in the case, hence are not favored with the benefit of the extended views of counsel for the appellant, or informed what additional propositions, if any, are presented by them, upon the questions involved, except as we ascertain the same from the brief of counsel for the appellee.

Appellant attacks the validity of the ordinance upon the ground that it is unreasonable, and also that it results in taking the property of a person without due process of law, for the reason, as he insists, that it does not provide for any investigation, in the first instance, into the character or conditon of the slaughterhouse, in order to determine whether it is offensive and injurious to the public health or comfort sufficient to constitute it a nuisance.    And it is further contended that the Legislature cannot authorize a

city to prohibit the slaughtering of animals within its limits. It is also insisted that conceding that the appellee was empowered to prohibit the maintaining of a slaughterhouse within its corporate limits, the ordinance in question was repealed by the act of 1893.

The charter of the city of Evansville in force at the time the ordinance in question was enacted, in the enumeration of the powers conferred upon the common council, provided as follows:

"Eighth. To direct the location of all powder-houses, slaughterhouses, tallow chandler's shops, soap factories, distilleries and all other houses, factories and shops that may detract from the comfort of the inhabitants of the city. And if thought necessary, to prohibit altogether the erection or continuance of all or any of such shops, factories, houses and establishments within the limits of said city."

See Local Acts 1846-47 of the general assembly, p. 13. The twentieth clause of the same section provides as follows:

"Twentieth. To abate and remove nuisances, and to declare what shall be deemed nuisances, and punishing by suitable penalties the person or persons causing or continuing the same, or suffering the same to remain on his, her or their premises, or both abate and punish, at discretion; and for the purpose of declaring what shall be deemed nuisances, and abating the same or causing and compelling the same to be abated, and punishing persons for causing, continuing or suffering the same as aforesaid, the common council shall have jurisdiction over both land and water one mile beyond the limits of the city in all directions."

On March 3, 1893, the Legislature of this State passed an act concerning the incorporation and government of cities having a population of more than

50,000 and less than 100,000, whereby the charter of appellee under which the ordinance in controversy was adopted, was expressly repealed. Acts 1893, p. 65. The city of Evansville was operating under this latter act at the time the appellant was charged with the offense of which he was convicted. Section 1 of this act is as follows:

"All by-laws, ordinances and regulations, not inconsistent with this act shall remain and continue in full force until altered and repealed by the common council in conformity with the provisions of this act, but all by-laws, ordinances and regulations inconsistent with this act are hereby abolished."

Section 23 thereof, in enumerating the powers granted to the common council, has the following provisions:

"To declare what shall constitute a nuisance, to prevent the same, require its abatement, authorize the removal of the same by the proper officers, and provide for the punishment of the person or persons causing the same, continuing or suffering the same to exist, and assess the expenses of its removal against such person or persons, and to provide for collecting such expenses either by placing the same on tax duplicate or by suit."

Also the following:

"To prohibit or regulate the location and management of starch factories, glue factories, renderies, tallow candleries, bone factories, soap factories, tanneries, slaughterhouses, breweries, distilleries, livery stables, foundries, and all other establishments of which the business or trade may become noxious or injurious to the public comfort or health; to prohibit the erection of such buildings or the continuance of such noxious or injurious occupations therein whenever the public comfort or health requires it."

It is well settled that when the adoption of a municipal ordinance or by-law is expressly authorized by the Legislature, and when the express grant of power is not in conflict with a constitutional prohibition or fundamental principles, it cannot be successfully assailed as unreasonable in a judicial tribunal. *Coal Float* v. *City of Jeffersonville*, 112 Ind. 15; *Skaggs* v. *City of Martinsville*, 140 Ind. 476, and cases there cited; *Rund* v. *Town of Fowler*, 142 Ind. 214. By the charter of 1847, in clause 8, of the enumerated powers conferred upon the city of Evansville, as above set out, the right to direct the location of slaughterhouses, or, if deemed necessary, to prohibit entirely the erection or continuance thereof within the limits of the city, is expressly granted to the common council, and these same powers are likewise granted under the act of 1893.

It is evident, we think, from an inspection of the provisions of the act of 1893, as herein set forth, that there is nothing in them,—neither is there anything otherwise in the act, with which the ordinance in controversy can be said to be inconsistent; consequently, it cannot be held to be abolished by the latter act, but as therein declared it "shall remain and continue in full force until altered and repealed by the common council," etc.

Slaughterhouses have been subject to government control through the agencies of towns and cities, both in this country and Europe, for a long period of time, upon the grounds that such control was necessary to promote cleanliness, and to protect the health and comfort of the inhabitants of such muncipalities. The adoption of laws relative to the regulation or prohibition of the business of slaughtering animals within reasonable limits, is generally considered as a proper

exercise of what is termed the police power of the State. This court, in the appeal of *Rund* v. *Town of Fowler, supra,* considered and upheld an ordinance of a character similar to the one before us. The court, in that case, said: "The penalty from which the appeal is prosecuted is for maintaining a slaughterhouse within the town limits. As we have said, the right to direct the location of such houses is given by the letter of the legislative grant, and the penalty is assessed for the failure to obey the direction that such houses shall not be located within the corporate limits." The grant to the appellee under her charter in regard to her right to legislate upon the subject of slaughterhouses is in its terms broader than is the right given to towns to legislate upon the same subject. In the case of the former, it is a two-fold grant. First, to direct the location of such houses. Second, to prohibit altogether their erection or continuance within the city limits. That the Legislature of the State had the authority to expressly confer this power upon the common council, in view of the many judicial interpretations of such legislative warrant, cannot now be successfully controverted. That the common council of appellee, in the enactment of the ordinance in question, properly and reasonably exercised the power granted to it under the charter, is equally as well settled. An act of the Legislature of the State of California, incorporating the city of Sacramento, granted power to the board of trustees to pass ordinances to control and regulate slaughterhouses, or provide for their exclusion from the city limits or any part thereof. In pursuance of this grant the city adopted an ordinance which declared it to be unlawful for any person to slaughter any animal within the city, or to erect, maintain, or use, etc., within the city, any house or

building as a slaughterhouse, or to dress or clean any slaughtered animal therein.

In the appeal of *Ex parte Heilbron*, 65 Cal. 609, the validity of this ordinance was sustained by the Supreme Court of that State. See authorities there cited.

The following authorities also sustain the validity of the ordinance. Dillon Munic. Corp. section 141; Tiedeman Munic. Corp. section 118; 2 Kent Com. 340; *Cronin* v. *People, etc.*, 82 N. Y. 318; *Metropolitan Board of Health* v. *Heister*, 37 N. Y. 661; *Village of Buffalo* v. *Webster*, 10 Wend. 100.

In the *Slaughterhouse Cases*, 16 Wall. 63, Miller, Justice, speaking for the court, after defining the police power, said: "The regulation of the place and manner of conducting the slaughtering of animals and the business of butchering within a city, and the inspection of the animals to be killed for meat, and of the meat afterwards, are among the most necessary and frequent exercises of this power."

By some of the courts a slaughtering establishment has been held to be a nuisance *per se;* while by others it has been regarded as *prima facie* a nuisance; and where it exists so near to dwelling houses as to impair the comfortable enjoyment of the dwellers therein, an actionable nuisance is created. But this question does not arise in the case at bar, and we need not inquire as to the manner in which appellant maintained his slaughterhouse. It is sufficient for the purpose of this appeal for the court to know that he was engaged in a business subject to legislative control, and that the power relative to such control was legally lodged in the common council, and by it properly and rightfully exercised. The contention that this ordinance punishes the prohibited act without re-

gard to any proof that the slaughterhouse in question was injurious to the health and comfort of the inhabitants of the city is without force. It was not essentially necessary to its validity for the council to allege or explain the reason for its enactment or the exigencies out of which it arose. It is an elementary rule that legislative bodies within their power, in the enactment of laws, may judge of the necessity, or the expediency therefor, and the exercise of that judgment is to be implied from the law itself. We again affirm that the passage of the ordinance was clearly within the authority expressly granted by the charter to appellee.

As to whether the slaughtering of a single animal by a person within the city for meat for his own consumption, would come within the inhibition of the ordinance, is not a question before us, and we are not therefore required to decide it. It follows that the ordinance is not open to the objections interposed by the appellant and the judgment is affirmed.

Filed January 7, 1896; petition for rehearing overruled April 24, 1896.